THE OREGON RAILROAD & NAVIGATION COMPANY, *Appellant*, v. O. L. THISLER, *Appellee*.

No. 18,261.

SYLLABUS BY THE COURT.

1. INTERSTATE COMMERCE—*How Interstate Freight Rates are Established.* Under the interstate commerce act the carrier is required to file with the commission its schedules of rates and also to promulgate and distribute them in order that the shipper may have access to them and ascertain their terms.

2. ——— *Counterclaim by Shipper for Injuries to Property Transported.* The provisions of that act do not preclude the shipper, after payment of the legal rates, from receiving or recovering for injuries to the property transported caused by the carrier's negligence.

3. LIMITATION OF ACTION—*When Not Available as a Defense by Foreign Corporation.* A foreign corporation which sues a Kansas shipper here to recover for an alleged balance due according to the legal rates can not, to a counterclaim for damages negligently caused to the property transported, successfully interpose the statute of limitations.

4. ——— *Nature of Action—When Counterclaim May Be Interposed.* Such action to recover for a claimed balance still due according to the legal tariff rates in force when the shipment was made, is not one upon the contract of shipment but is one to recover regardless thereof, and hence the plaintiff can not use such contract to defeat such counterclaim.

Appeal from Dickinson district court. Opinion filed June 7, 1913. Reversed in part.

*R. W. Blair, B. W. Scandrett,* and *C. A. Magaw,* all of Topeka, for the appellant.

*O. L. Moore,* and *H. L. Humphrey,* both of Abilene, for the appellee.

The opinion of the court was delivered by

WEST, J.: This is an action to recover a claimed balance of freight charges for a shipment of property from Enterprise, Kan., to Oaksdale, Wash. In March, 1907, the defendant desired to ship four stallions and a jack with certain personal property, and after communicating with the agent of the Rock Island at Enterprise and being assured that the proper rate for an emigrant car had been ascertained, such a car was set out for him and the property was shipped and delivered to the defendant at Oaksdale, where the freight charge of $150 was paid. It is claimed that as the defendant was not an emigrant he was not entitled to this rate and that the proper and lawful charge was $306. In December, 1909, the plaintiff sued in Dickinson county, Kansas, to recover $156, the alleged amount still due, averring that the defendant represented to the agent that he desired to ship emigrant movables, "and by misrepresenting the character of the articles loaded he induced the agent to issue to him a bill of lading for a carload of emigrant movables." It was alleged that prior to this time all the carriers over whose line the shipment went "had filed schedules of rates for interstate shipments with the Interstate Commerce Commission as required by law." An answer was filed alleging that to permit the plaintiff to recover would be equivalent to a recovery for its own violation of the federal statute. The alleged fraud was denied and the representations of the Enterprise agent set forth, and it was expressly denied that any of the railroads concerned had at the time of the shipment filed schedules of rates as required by law, and expressly

denied that they had caused any schedules to be printed and copies for the use of the public posted or kept accessible to the public as required by law. As a counterclaim the defendant alleged that the plaintiff had by its negligence so injured the jack in question as to damage the defendant in the sum of $500. A general denial by way of reply and an amendment to the petition setting up the contract of shipment and a denial thereof closed the pleadings. The contract provided that the liability in case of loss of the jack should not exceed $100, and that as a condition precedent after any damages, written notice must be given to some general officer or to the nearest station agent before the injured stock was removed; also, that no action should be begun for recovery of damages after six months from the time a cause of action accrued. The jury returned a verdict in favor of the defendant for $200, and found that the rate on a forty-foot car of emigrant movables was $150, that the rate for such car loaded like the one in controversy was $306, and that the defendant gave no notice in writing of any claim of damages to the jack. The jury were instructed that if they should find that the defendant had not paid all the freight required by the tariff or schedule of rates in force under the interstate commerce act at the time of making such shipment, "which rates being on file with the Interstate Commerce Commission and approved by the same, and applying to such shipments," the plaintiff would be entitled to recover the amount found due. A motion for a new trial was overruled.

The plaintiff appeals and contends that under the Carmack amendment (Part 1, 34 U. S. Stat. at Large, ch. 3591, § 7, p. 593) to the interstate commerce act the contract of shipment furnished its own and only legal provisions and that the limitation of $100 for loss of the animal in question was valid and binding;

also, that the counterclaim could not properly be considered as a set-off against the plaintiff's demand, for the reason that this would amount to changing the rate required by federal legislation, which precludes the carrier from charging a greater or less or different compensation than the amount specified in the proper tariff schedule; that the defendant's cause of action is based upon a fraudulent transaction, and the courts will not aid him; and that the defendant's cause of action is barred by the statute of limitations. This was raised by reply to the defendant's answer to the amended petition.

The testimony showed that the defendant was a resident of Kansas, that the plaintiff is a corporation and hence the cause of action did not arise between nonresidents of this state, and the plaintiff being a foreign corporation the statute could not run in its favor. (Civ. Code, § 102; *Williams v. Railway Co.,* 68 Kan. 17, 74 Pac. 600; *Bank v. Wykes,* 88 Kan. 750, 129 Pac. 1131.)

Each party charged the other with attempting to obtain relief from a situation which their mutual fraud brought about. We prefer, however, to regard the matter as one of mistake rather than fraud, and think the evidence warrants this view.

It is insisted by the defendant that the plaintiff is not suing upon the contract, but is compelled to abandon the contract which was entered into by the shipper and the initial carrier, and therefore can not be heard to demand that the shipper be limited to the $100 claim for damages to the jack. Aside from the technicalities of pleading, it appears clearly enough that the plaintiff was really suing to recover the difference between the $150 charged and the $306 which it alleged ought to have been charged, and in order to nullify the counterclaim the contract was set up. The jury, in answer to special questions, found that the rate on a forty-foot car of emigrant movables was $150, but on such car

Railroad Co. v Thisler.

loaded like the one in controversy $306. The testimony showed that the agent at Oaksdale saw the injured jack repeatedly and stated to the defendant that he would make a report to the company, which manifestly avoided the necessity of a written demand by the owner, even if the terms of the contract should be deemed essential under the peculiar circumstances of this case. (*Railway Co. v. Wright,* 78 Kan. 94, 95 Pac. 1132.) The testimony showed a serious injury to the animal, occasioned by the negligence of the plaintiff's employees. The jury allowed for such injury $200, and by their general verdict found for defendant in the same sum, which had the necessary effect of allowing the plaintiff nothing for the $156 difference between the rate found and the freight paid. The instructions made it the duty of the jury to find for the plaintiff for whatever remained of the freight as required by the tariff or schedule of rates "in force under the Interstate Commerce Act at the time of making such shipment, which rates being on file with the Interstate Commerce Commission and approved by the same, and applying to such shipments." The defendant took no exception to this instruction and offered none in its stead, but now urges that as there was no evidence of rates established and published, as required by the federal statute, the findings must be construed as simply meaning that the carrier charged the two rates for the same car, depending upon the character of the shipper and the shipment, whether emigrant or not, and not that such were the legally controlling rates.

The requirements were clearly set forth in *United States v. Miller,* 223 U. S. 599, wherein it was held that while posting is not an essential condition of making the tariff legally operative, nevertheless "the publication intended consists in promulgating and distributing the tariff in printed form preparatory to putting it into effect, while the posting is a continuing act enjoined

upon the carrier, while the tariff remains operative, as a means of affording special facilities to the public for ascertaining the rates in force thereunder. In other words, publication is a step in establishing rates, while posting is a duty arising out of the fact that they have been established." (p. 604.)    Section 6 of the act (Part 1, 34 U. S. Stat. at Large, ch. 3591, pp. 586, 587) thus construed requires that the carrier shall "file with the commission" and "print and keep open to public inspection," and the schedules must be plainly printed in large type, "and copies for the use of the public shall be kept posted," etc., and carriers are prohibited from engaging in transportation of passengers or property "unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this Act." Certainly the mere filing with the commission could give the shipper no practical means of ascertaining the rates, and hence their promulgation and distribution were by force of necessity as well as by force of the statute made necessary.

In ruling on the plaintiff's motion for a new trial the court below said that the jury had to pass on the question "whether those rates were on file and approved by the Interstate Commerce Commission. . . . I think the jury didn't allow anything for freight in this case. That is my view of it. And it was their province to say whether, from a preponderance of the evidence, you were entitled to anything or not."

It is thus demonstrated that the trial court thought the jury had failed to find that any rate was in force under the federal statute, and that the evidence did not compel such finding. Counsel say in their brief that:

"The undisputed evidence shows that the plaintiff had filed its schedules with the Commission as required by law, and that the rates specified therein were as claimed by the plaintiff, and the jury so found."

They also say that there was no evidence tending to show that these rates had been *"approved* by the Commission," and they urge that it was error to include this requirement in the instruction. We have examined the transcript and find no evidence showing that the rates contended for were promulgated and distributed as required by the terms of the act, and as the petition alleged only a filing with the commission it would be quite natural that no evidence should be offered to prove anything more than that. It was alleged that the "legal rate" was $306, but it does not appear to have been deemed necessary by the pleader that promulgation and distribution be had in order to make a rate legal.

Recent federal decisions that the limitations of the contract as to time, notice and amount are binding, regardless of state legislation, are referred to. We are familiar with these decisions and have recently recognized their binding force (*Nursery Co. v. Nursery Co.,* 89 Kan. 522, 132 Pac. 149), but we do not regard this action as one on the contract, and the attempt to set it up to defeat the counterclaim we do not deem sufficient for the accomplishment of the purpose.

Neither do we deem the permission to recover on a counterclaim productive of a possible violation of the nondiscriminating provisions of the interstate commerce act. The shipper must pay whatever the law requires for the transportation, and the carrier must pay for what it has damaged the property transported. The obligations are different, and arise the one out of contract and the other out of negligence, and neither the letter nor the spirit of the statute precludes the parties from discharging their obligations either voluntarily or by the compulsion of litigation.

If the rate found by the jury was in fact the legally established and controlling rate, then as it was the duty of the carrier to charge it, a corresponding right exists to collect it. The legality, depending upon the previous

promulgation and distribution, does not appear to have been properly presented to the jury, and, affirming the judgment in other respects, the cause is remanded for a new trial upon the sole question as to whether the $306 rate was at the time of the shipment legally in force in accordance with the requirements of the interstate commerce act.