[No. 14020. *En Banc.* November 13, 1918.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v. C. M. LONGMIRE, *Respondent*.[1]

EVIDENCE (68) — BEST AND SECONDARY — FACTS EVIDENCED BY WRITINGS. The continuous interstate shipment of live stock may be shown by the testimony of a witness accompanying the shipment, in the absence of the original waybills, which cannot be regarded as the better evidence.

CARRIERS (7) — DISCRIMINATION — CONTRACTS VIOLATING REGULATIONS—POSTING TARIFFS. Since an interstate carrier's failure to post its tariffs, as required by U. S. Compiled Statutes, 1916, § 8569, would defeat the purpose of the act to prevent discrimination in rates, posting need not be proven in an action to collect the difference between the rates actually charged and the carrier's tariffs filed with the interstate commerce commission.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered September 18, 1916, upon granting a nonsuit, dismissing an action by a carrier to recover the published tariff rates for an interstate shipment of live stock. Reversed.

*Rigg & Venables, Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellant.

*H. J. Snively,* for respondent.

TOLMAN, J.—Appellant sues to recover the difference between the amount actually collected for freight on five cars of sheep shipped from Terre Bonne, Oregon, to Seattle, Washington, and the rate as fixed by the joint tariffs on file with the interstate commerce commission covering such services, which it alleges it is required as an interstate carrier to collect.

Appellant is a common carrier operating a line of railway from Wallula, Washington, to Seattle, Washington, via. North Yakima, and the Oregon-Washing-

[1] Reported in 176 Pac. 150.

ton Railway & Navigation Company is a common carrier operating a like line between Terre Bonne, Oregon, and Wallula, Washington. About the 13th day of October, 1912, respondent shipped from Terre Bonne five carloads of sheep consigned to Frye & Company, Seattle (in six cars, however, four being double decked and two single decked), and accompanied the shipment himself, making a continuous trip to the end of the Oregon-Washington Railway & Navigation Company's line at Wallula, where the cars were turned over to appellant, and proceeding from there without unloading them and with only a few hours' delay necessitated by train schedules to North Yakima, where the sheep were unloaded for grazing in accordance with the interstate commerce law and in pursuance with respondent's wishes or orders.

When the sheep were delivered to appellant at Wallula, the usual live stock contract was entered into between respondent and appellant, which is in evidence and shows that the shipment had its inception at Terre Bonne, Oregon, was destined to Frye & Company, Seattle, and gives the numbers of the waybills and the car numbers and initials.

Subsequently respondent sold his billings to Frye & Company of Seattle, and substantially the same number of sheep were shipped on from North Yakima to Seattle in cars furnished by appellant for that purpose. Respondent paid to appellant's agent at North Yakima the sum of $435 as being the entire freight charge upon the five cars of sheep from Terre Bonne, Oregon, to Seattle, Washington. The freight rate, as established by the joint tariffs of the Oregon-Washington Railway & Navigation Company and the appellant on file with the interstate commerce commission, fixed the charge for this service at $650, and

upon discovering the mistake or undercharge, this action was brought to recover the difference of $215.

On the trial below, the appellant offered evidence to show the continuous shipment, the transfer from one line to the other, the signing of the live stock agreement, and, by its records, traced the shipment to its unloading for grazing purposes at North Yakima and the later reshipment to Seattle. It showed the payment of $435 as the supposed full charge for the service, and introduced the printed tariff sheets with the certificate of the secretary of the interstate commerce commission showing the same to be the schedules on file with the interstate commerce commission and in effect at the time of the shipment referred to, from which it appears that the freight charges for the service rendered to respondent were $650. Appellant did not offer in evidence the original live stock contract or the waybills issued by the Oregon-Washington Railway & Navigation Company at Terre Bonne, Oregon. No evidence was offered by the respondent. The trial court entered a judgment dismissing the action with prejudice, and this appeal follows.

Appellant contends that the trial court held that there was no evidence, in the absence of the original waybills, to establish the continuous interstate shipment, and, therefore, no proof that the rates fixed by the tariffs on file with the interstate commerce commission should apply. The testimony of respondent, who was called as a witness by appellant, together with the records introduced, establishes the interstate character of the shipment; and while the waybills might have been admissible for that purpose, we see no reason why they should be regarded as better evidence than the testimony of one who accompanied the

shipment. The supreme court of Oregon, after a careful review of the authorities, has recently said:

"The doctrine to be drawn from all these decisions is that a bill of lading is not conclusive of the character of the shipment, yet the instruction requested and specified in the third assignment of error would require the trial judge to say as a matter of law, based alone upon the bill of lading in question, that the transaction was one of interstate commerce so as to oust the state court of jurisdiction. If such a document is inconclusive in one case it is inconclusive in others. The clear reason of the cases cited is to the effect that the bill of lading may be considered as a circumstance with other incidents of the transaction throwing light on the question of fact whether it be interstate or intrastate commerce." *Service v. Sumpter Valley R. Co.*, 88 Ore. 554, 576, 171 Pac. 202.

Under the authority of the case just cited, and *Atchison, T. & S. F. R. Co. v. Harold*, 241 U. S. 371, we feel constrained to hold that the shipment was interstate in character. Respondent strenuously contends, however, that, conceding the character of the shipment, yet appellant's proof is not sufficient to entitle it to recover, because § 8569, U. S. Compiled Statutes, 1916, which provides for the fixing of such tariffs, says:

"Every common carrier subject to the provisions of this act shall file with the commission created by this act and print and keep open to public inspection schedules showing all the rates," etc.

And that, in addition to the proof of filing, there must also be proof of the printing and keeping open to public inspection of the schedules.

There are decisions of some of the state courts which sustain this view. Among others, respondent cites *Oregon R. & Nav. Co. v. Thisler*, 90 Kan. 5, 133 Pac. 539. Our attention is, however, called to a still

later Kansas case, *Atchison, T. & S. F. R. Co. v. Wagner,* 102 Kan. 817, 172 Pac. 519, in which the court says:

"Two reasons are suggested by the appellee in support of the judgment. The first one to be noticed is the claim that the appellant was not entitled to recover, because there was no showing that it had caused the rate filed with the commission to be published. On the other hand, the appellant relies upon the presumption that it took all the necessary steps required by law in establishing the rate. By the Elkins Act of February 19, 1903 (C. 708; 32 Stat. 847 [U. S. Comp. St. 1916, §§ 8597-8599]), a willful failure of the carrier to publish the tariff of rates and charges as filed is made a misdemeanor, and the act declares that upon conviction 'the corporation offending shall be subject to a fine of not less than $1,000 nor more than $20,000 for each offense.' In *Cincinnati & Tex. Pac. R. v. Rankin,* 241 U. S. 319, 36 Sup. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265, it was said:

" 'It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law.' 241 U. S. 327, 36 Sup. Ct. 558 (60 L. Ed. 1022, L. R. A. 1917A, 265). . . .

"We think the presumption is one upon which the appellant was entitled to rely until it was met by some evidence to the contrary. Besides, the contention is technical; there is no claim that the facts, if shown, would disclose that the schedule of rates had not been duly published. In *Railroad Co. v. Thisler,* 90 Kan. 5, 133 Pac. 539, some countenance was given to the technical rule which the appellee is now invoking; but there the cause was sent back for a trial of the sole question whether the rate had been duly published. The effect of the presumption that the railway company had not violated the penal statutes was not referred to in the opinion."

The statute being a Federal one, we are, of course, bound by the construction placed upon it by the supreme court of the United States, and respondent,

recognizing that fact, seems to place his main reliance upon *United States v. Miller,* 223 U. S. 599. This was a criminal prosecution for alleged violation of the act, and the question under consideration was the sufficiency of the indictments, the circuit court having sustained demurrers to the indictments because they failed to allege that the schedules and tariffs charged to have been violated had been posted in the manner required by law. The sole question decided was that such posting was not a necessary step in establishing rates and, therefore, no allegation of failure to post was necessary in the indictment. The court did say:

"Publication and posting in the sense of the act are essentially distinct. This is the import of the provision that the requirements relating to 'publishing, posting, and filing' may be modified by the commission in special circumstances, for if publishing included posting, mention of the latter was unnecessary. And from all the provisions on the subject it is evident that the publication intended consists in promulgating and distributing the tariff in printed form preparatory to putting it into effect, while the posting is a continuing act enjoined upon the carrier while the tariff remains operative, as a means of affording special facilities to the public for ascertaining the rates in force thereunder."

It will be observed that the court did not say that the publishing of the tariff was a step necessary to be taken and proved before the tariff could be legally enforced.

In view of the penalties provided by the act for failure to observe any of its terms, is anything necessary to be done and proved beyond the filing of the schedules with the interstate commerce commission to make the schedules enforceable? If so, then the carrier, by neglecting to do such necessary thing, could defeat the purpose of the law and, disregarding the

schedules filed, might charge discriminating rates and plead as a defense to an action brought to enforce the penalty that the schedules were not lawfully in force. Or, if the carrier might not plead its own wrong, there would be no reason why the shipper, who received the benefit of the discrimination and who is equally liable to the penalty, might not so plead. We think the supreme court of the United States has sufficiently indicated that it holds this view. It has said:

"It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law." *Cincinnati, N. O. & T. P. R. Co. v. Rankin,* 241 U. S. 319, L. R. A. 1917A 265.

"The fact is that the railroad had complied with the law as to filing tariff sheets and had also long before the time in question filed a book of rules of the Chicago Car Service Association, of which it was a member. . . . The argument is that such documents were not sufficiently formal to comply with the law, and hence afforded no ground for allowing demurrage. But the contention is without merit. . . . Equally without merit is the insistence that there was no proof that the documents were posted for public inspection." *Berwind-White Coal Min. Co. v. Chicago & E. R. Co.,* 235 U. S. 371.

"Counsel for the railroad offered in evidence copies of its tariff schedules on file with the interstate commerce commission, certified by the chairman of that body, . . . and certification by the chairman is insufficient. . . . In order to determine the liability assumed for baggage it was proper to consider applicable tariff schedules on file with the interstate commerce commission; and the carrier had a Federal right not only to a fair opportunity to put these in evidence, but also that, when before the court, they should be given due consideration. . . . After their admission in evidence by the trial court the schedules could not be disregarded arbitrarily without denying

the railroad's Federal right." *New York Cent. & H. R. R. Co. v. Beaham,* 242 U. S. 148.

"The rate when made out and filed, is notice, and its effect is not lost, although it is not actually posted in the station." *Boston & Maine R. R. v. Hooker,* 233 U. S. 97, Ann. Cas. 1915D 593, L. R. A. 1915B 450.

Still more convincing is the decision of the United States supreme court in *American Express Co. v. United States Horse Shoe Co.,* 244 U. S. 58, when read in connection with the rulings of the state court reported in *United States Horse Shoe Co. v. American Express Co.,* 250 Pa. 527, 95 Atl. 706, which were there being reviewed.

The interstate commerce law was enacted primarily for the protection of the shipper and to prevent discrimination, and unless carriers are required to collect undercharges, even when inadvertently made, a way is left open to defeat the very purpose of the act and to permit the discrimination which the law forbids.

The judgment appealed from will be reversed, with directions to enter a judgment in favor of the appellant against respondent for $215 and costs.

MAIN, C. J., MITCHELL, HOLCOMB, MACKINTOSH, FULLERTON, PARKER, and MOUNT, JJ., concur.