# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 73564-1-I |
| v. | PUBLISHED OPINION |
| ROBERT LEE TYLER, | |
| Appellant. | FILED: August 15, 2016 |

DWYER, J. — The strictures of the Fourteenth Amendment, enacted in 1868, have applied to the state of Washington since its admittance into the Union on November 11, 1889. The standard of proof guaranteed by the Fourteenth Amendment's due process clause provides the sole basis upon which Washington courts review criminal convictions for evidentiary sufficiency. Recently, the United States Supreme Court clarified this federal constitutional standard as it applies to assessing the government's proof of "additional elements" set forth in a to-convict instruction—those that are not essential elements of the charged crime. The Court instructs that these "additional elements" are to be disregarded and that the evidentiary sufficiency of the government's proof must be assessed solely against the essential elements of the charged crime.

In this case, Robert Tyler was charged with possession of a stolen vehicle. The trial court's to-convict instruction unnecessarily included definitional terms

that are not essential elements of that crime. Tyler contends on appeal that the to-convict instruction thereby created alternative means of committing the offense and that (given Washington's requirement of jury unanimity) the charges against him must be dismissed with prejudice unless the State proved each of the "false alternative means" beyond a reasonable doubt.

The United States Supreme Court is the paramount authority on the federal constitution. Given that Court's explication on the interplay between the due process clause's reasonable doubt requirement and trial court-created "additional elements" of crimes, it is apparent that prior Washington case authority on this subject no longer properly states the law. Instead, as the United States Supreme Court and the Fourteenth Amendment's due process clause command, the government's proof must be assessed against the essential elements of the charged crime, not against "additional elements" or "false alternative means" created by a trial judge and inserted into a to-convict instruction. Pursuant to this understanding, the State adduced sufficient evidence to support Tyler's conviction and that conviction was reached by a unanimous jury. Accordingly, we affirm.

I

Bruce Champagne found that his car, a white Honda Accord sedan, was stolen from his driveway. Around 2:30 a.m. the following early winter morning, Deputy Sheriff Scott Stich was patrolling near a service road surrounded by deep forest near Darrington, Washington. About one-half mile up a gravel roadway, the deputy encountered two vehicles parked 20 feet apart, a white Honda sedan

and a pick-up truck. The deputy saw that the sedan was lifted up on a jack such that its driver's side wheels were in the air.

Upon approaching the pick-up truck, the deputy found four people located thusly: Robert Tyler and Rebekah Nicholson were inside the truck's passenger cabin; Tyson Whitt was partially covered by a tarp in the bed of the pick-up; and Anthony Coleman was standing outside of the truck.

The deputy, from outside the truck, spoke with Tyler, who was inside the passenger cabin. Tyler stated that he owned the truck and produced a corresponding bill of sale. Looking inside the truck's passenger cabin, the deputy observed what appeared to be parts stripped from a car (a disconnected car stereo and disconnected speakers). Upon an inquiry by the deputy, Tyler stated that he did not know anything about the items, neither how they happened to be in his truck nor to whom they belonged. Tyler further stated that he was there helping a friend, but did not specify who he was helping or where the friend was located. Additionally, when asked who owned the Honda, Tyler stated that he did not know.

Upon inspection of the sedan, the deputy observed that it appeared as if it was being stripped of parts. The bolts on the suspended wheels were partially loosened. Looking inside the sedan's passenger cabin, the deputy noticed that it was missing its stereo and front door speakers. In the sedan's ignition, the deputy found a key with a Chrysler manufacturer's logo thereon and noted that the key had been "shaved," a modification commonly associated with vehicle theft.

-3-

The deputy then conducted a computer search of the sedan's license plate number. He learned that the sedan had been reported stolen. He then contacted Champagne, the vehicle's owner. During their discussion, the deputy determined that the brand of car stereo that Champagne said had been in his sedan matched that of the disconnected car stereo now located in the passenger cabin of Tyler's truck.

The deputy again spoke with Tyler. When Tyler failed to give the deputy direct answers regarding the items in his truck's cabin, the deputy arrested him.

During a subsequent interrogation, Tyler explained that he had followed Whitt to the service road as a favor to Whitt's parents. Tyler also said that he saw Whitt taking parts out of the sedan. From this, Tyler reasoned that the sedan Whitt was driving had been stolen.[1] Tyler reiterated, however, that he himself did not steal the vehicle.

Tyler was charged with one count of possession of a stolen vehicle.[2]

The trial court's to-convict instruction read, in part, as follows:

> To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 10th day of January, 2014, the defendant knowingly received, retained, possessed, concealed, disposed of a stolen motor vehicle.

Jury Instruction 4.

---

[1] Whitt was subsequently arrested, charged, and convicted of stealing the sedan.

[2] "A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56.068(1) (alteration in original).

The jury found Tyler guilty. He was sentenced to 45 days of confinement. The court also imposed the mandatory $100 DNA fee and $500 victim penalty assessment.

## II

## A

The due process clause of the Fourteenth Amendment mandates that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. In a criminal prosecution, "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). On an appeal from a criminal conviction, due process further guarantees a defendant the right to challenge the sufficiency of the evidence proffered by the government. Jackson v. Virginia, 443 U.S. 307, 314-16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

Washington's constitution has never been interpreted to include a proof beyond a reasonable doubt guarantee. Instead, prior to Winship, "[t]he requirement of proof beyond a reasonable doubt ha[d] . . . only common law and statutory origins." State v. Odom, 83 Wn.2d 541, 546, 520 P.2d 152 (1974); see former RCW 9A.04.100(1) (1975) ("No person may be convicted of a crime unless each element of such crime is proved by competent evidence beyond a reasonable doubt."); REM. & BAL. CODE § 2308 (1910) ("Every person charged

with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt.").[3]

Washington courts apply the federal constitutional standard for appellate review of the evidentiary sufficiency of the government's proof in a criminal case. This is best evidenced by our Supreme Court's alteration of its evidentiary sufficiency analysis in State v. Green, 91 Wn.2d 431, 588 P.2d 1370 (1979) (Green I), as reconsidered in State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980) (Green II).

In Green I, the court reviewed a challenge to the sufficiency of the evidence of the element of kidnapping necessary to support a conviction for aggravated murder in the first degree. 91 Wn.2d at 442-43. In assessing the sufficiency of the evidence, the court applied the then-prevailing "substantial evidence" test, limiting its review "to a determination of whether the State has produced *substantial* evidence tending to establish circumstances from which a jury could reasonably infer the fact to be proved." Green I, 91 Wn.2d at 442. The court concluded that there existed "substantial evidence from which the jury could infer appellant killed while in the course of or in furtherance of the statutorily defined offense of kidnapping." Green I, 91 Wn.2d at 444.

Soon after the filing of the Green I decision, the United States Supreme Court issued its opinion in Jackson.

---

[3] See also State v. Donckers, 200 Wash. 45, 50, 93 P.2d 355 (1939) ("'It is sufficient if the evidence produce moral certainty, to the exclusion of every reasonable doubt.'" (quoting 8 RULING CASE LAW Criminal Law § 222, at 227 (1915))).

Prior to Jackson, the applicable federal standard was the then-prevailing "no evidence" criterion of Thompson v. City of Louisville, 362 U.S. 199, 80 S. Ct. 624, 4 L. Ed. 2d 654 (1960), which held that "a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm." Jackson, 443 U.S. at 314.

In Jackson, the Court's task was to decide whether the Fourteenth Amendment due process standard recognized in Winship "constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." Jackson, 443 U.S. at 313-14.

The Court held that "an essential of the due process guaranteed by the Fourteenth Amendment" is that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson, 443 U.S. at 316. The Court emphasized that the inquiry on an evidentiary sufficiency review "must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 318. This inquiry, "imping[ing] upon [the fact-finder's] discretion only to the extent necessary to guarantee the fundamental protection of due process of law," focuses on "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319.

Where sufficient evidence does not support a conviction, the judgment of guilt must be vacated, as such a conviction "cannot constitutionally stand." Jackson, 443 U.S. at 318.

In response to Jackson, our Supreme Court granted reconsideration of Green I. In its reconsidered opinion, the court felt compelled to abandon the "substantial evidence" standard previously applied by Washington courts. Green II, 94 Wn.2d at 221. Instead, following Jackson, the court acknowledged the applicability of the federal constitutional standard, holding that the proper inquiry in an evidentiary sufficiency review "is whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of kidnapping *beyond a reasonable doubt.*" Green II, 94 Wn.2d at 221-22 (citing Jackson, 443 U.S. at 319).

In every such case since Green II, our Supreme Court has applied only the federal constitutional standard announced in Jackson when reviewing whether a conviction is supported by sufficient evidence. See, e.g., State v. Condon, 182 Wn.2d 307, 314, 343 P.3d 357 (2015); State v. Bencivenga, 137 Wn.2d 703, 706, 974 P.2d 832 (1999); State v. Luvene, 127 Wn.2d 690, 712, 903 P.2d 960 (1995).

Thus, on appellate review of a criminal conviction, Washington's *sole* evidentiary sufficiency standard is that which the Fourteenth Amendment requires.

B

Flowing from the principles discussed in Jackson, earlier this year the United States Supreme Court decided Musacchio v. United States, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016), which clarified the proper elements against which a court assesses a conviction's evidentiary sufficiency pursuant to the Fourteenth Amendment.

The Supreme Court had granted review to determine whether "the sufficiency of the evidence in a criminal case should be measured against the elements described in the jury instructions where those instructions, without objection, require the Government to prove more elements than do the statute and indictment." Musacchio, 136 S. Ct. at 714. Musacchio's trial judge erroneously added an element to the to-convict instruction that was not part of the charged crime and the jury returned a guilty verdict. Musacchio, 136 S. Ct. at 714.

The Supreme Court held that, "when a jury instruction sets forth all the elements of the charged crime but incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the *charged crime*, not against the erroneously heightened command in the jury instruction." Musacchio, 136 S. Ct. at 715 (emphasis added). In reaching its holding, the Court explained that, "[a] reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed." Musacchio, 136 S. Ct. at 715. Rather, "[s]ufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to

the jury.'" Musacchio, 136 S. Ct. at 715 (quoting Burks v. United States, 437 U.S. 1, 16, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)). Citing to Jackson, the Court reaffirmed that "[a]ll that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." Musacchio, 136 S. Ct. at 715 (citing Jackson, 443 U.S. at 319).

The law-of-the-case doctrine does not apply to change this result, the Court held, because an evidentiary sufficiency challenge is not properly influenced by how the jury was instructed. Musacchio, 136 S. Ct. at 715. Indeed, the law-of-the-case doctrine "does not bear on how to assess a sufficiency challenge when a jury convicts a defendant after being instructed— without an objection by the Government—on all charged elements of a crime plus an additional element." Musacchio, 136 S. Ct. at 716.

Rather, a reviewing court conducting an evidentiary sufficiency inquiry must consider "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Musacchio, 136 S. Ct. at 715 (quoting Jackson, 443 U.S. at 319). "The Government's failure to introduce evidence of an additional element does not implicate the principles that sufficiency review protects." Musacchio, 136 S. Ct. at 715.

C

Tyler asserts that Musacchio is inapplicable to the issues herein. This is so, he contends, because Washington's law-of-the-case doctrine requires the

reviewing court to assess the evidentiary sufficiency of the government's proof against the elements set forth in the to-convict instruction, notwithstanding that one or more of the elements set out are not essential elements of the charged crime. For this proposition, Tyler relies on State v. Hickman, 135 Wn.2d 97, 954 P.2d 900 (1998), and State v. Hayes, 164 Wn. App. 459, 262 P.3d 538 (2011). Both decisions support his point of view. Neither now correctly states the law.

1

In Hickman, our Supreme Court considered whether it should assess the evidentiary sufficiency of the prosecution's proof against an additional element (therein venue) because the trial court's to-convict instruction mistakenly included venue as an element, even though venue was not an essential element of the charged crime of insurance fraud. 135 Wn.2d at 101-03. The court resorted to Washington's law-of-the-case doctrine for the proposition that not-objected-to jury instructions become the law of the case and that the prosecution "assumes the burden of proving otherwise unnecessary elements of the offense." Hickman, 135 Wn.2d at 101-02. Then, in setting out the applicable standard of review, the court quoted the federal constitutional standard articulated in Jackson and applied in Green II. Hickman, 135 Wn.2d at 103.

Combining these premises, the court then analyzed whether the prosecution adduced sufficient evidence of the additional element of venue to support the insurance fraud conviction. Hickman, 135 Wn.2d at 104-06. Finding

that it had not done so, the court reversed the conviction and ordered that the charge be dismissed with prejudice.[4] Hickman, 135 Wn.2d at 105-06.

In light of Musacchio, Hickman's evidentiary sufficiency analysis no longer properly states the law, nor does its analytical pairing of the federal due process appellate evidentiary sufficiency test with the law-of-the-case doctrine. Indeed, the reasoning and result in Hickman are directly at odds with the Fourteenth Amendment's evidentiary sufficiency standard, as articulated in Musacchio.[5] Because Washington courts apply the federal constitutional standard for evidentiary sufficiency review, decisions of the United States Supreme Court are the paramount authority on the standard's proper application. N. Pac. Ry. Co. v. Longmire, 104 Wash. 121, 125, 176 P. 150 (1918). "The United States Supreme Court is, of course, the ultimate authority concerning interpretation of the federal constitution." State v. Hess, 12 Wn. App. 787, 792, 532 P.2d 1173, aff'd, 86 Wn.2d 51, 541 P.2d 1222 (1975); accord S.S. v. Alexander, 143 Wn. App. 75, 92, 177 P.3d 724 (2008) (United States Supreme Court is the ultimate authority concerning the interpretation of federal law). Accordingly, Musacchio supersedes all inconsistent interpretations by the courts of this state.[6]

---

[4] "The double jeopardy clause of the Fifth Amendment to the U.S. Constitution protects against a second prosecution for the same offense, after acquittal, conviction, or a reversal for lack of sufficient evidence." State v. Hardesty, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996). Our state constitutional double jeopardy clause, Wash. Const., art. I, § 9, "is interpreted in the same manner as the federal provision." State v. Pascal, 108 Wn.2d 125, 131 n.1, 736 P.2d 1065 (1987).

[5] Our Supreme Court was not alone in having decisional authority superseded in this manner. See, e.g., United States v. Musacchio, 590 F. Appx. 359, 361 (5th Cir. 2014); United States v. Romero, 136 F.3d 1268, 1271-72 (10th Cir. 1998) (applying the Jackson standard to additional elements per the law-of-the-case doctrine).

[6] When the Washington Supreme Court has announced a rule of state law, that pronouncement will be altered only when the rule announced is shown to be both incorrect and harmful. In re Determination of Stranger Creek, 77 Wn.2d 649, 466 P.2d 508 (1970). This test

-12-

2

In Hayes, we extended the rule in Hickman to purported alternative means of committing an offense that were erroneously included in a to-convict instruction. Hayes addressed the same issue as is now before us—whether, in a prosecution for possession of a stolen vehicle, the evidentiary sufficiency of the state's proof is properly assessed against the elements set out in a to-convict instruction when the to-convict instruction erroneously included a five-item definitional list that collectively defines an element (possession) but do not, as to each term, constitute separate elements of the charged crime.[7] 164 Wn. App. at 480-81. We then applied the analytical construct set forth in Hickman. Compare Hayes, 164 Wn. App at 480-81, with Hickman, 135 Wn.2d at 102.

Pursuant to Hickman's coupled application of the federal due process evidentiary standard of review and the law-of-the-case doctrine, we assessed the sufficiency of the evidence against the to-convict instruction's definitional list, treating each definitional term as an alternative means that the prosecution was required to prove. Hayes, 164 Wn. App. at 481. We emphasized that we were treating the definitional terms as alternative means, "not because they necessarily are alternative means, but because they were listed in the to-convict instruction[]."[8] Hayes, 164 Wn. App. at 481. Finding that the State failed to meet its burden of proving that the defendant had "disposed of" the vehicle, we

does not apply to a state Supreme Court pronouncement of federal law that is at odds with a ruling of the United States Supreme Court.

[7] The same mistake was made by the trial court herein. The list of terms is set forth and discussed in section III, infra.

[8] We use the term "false alternative means" to describe this circumstance.

reversed the conviction and dismissed the charge. Hayes, 164 Wn. App. at 481. As with Hickman, our analysis in Hayes no longer properly states the law.

The cases upon which Tyler relies for his Fourteenth Amendment evidentiary sufficiency claim have been superseded by the United States Supreme Court's decision in Musacchio. Accordingly, we reject Tyler's assertion that Musacchio is inapplicable to the issues herein.

D

In light of Musacchio, then, Washington courts have previously misinterpreted the scope of the Fourteenth Amendment's due process protections pertaining to evidentiary sufficiency review. Our courts have erroneously reviewed the State's proof for evidentiary sufficiency measured against additional elements or means set out in a to-convict instruction when those additional elements or means were not provided for in the charged crime.

Musacchio makes it clear that a reviewing court is to disregard "additional elements" and "false alternative means" set out in a to-convict instruction and, instead, must evaluate the sufficiency of the evidence based on the essential elements of the charged crime as enacted by the legislature.[9]

This framework is in accordance with the understanding that it is the legislature, and not the trial court, that possesses the constitutional authority to create a crime. See, e.g., State v. Feilen, 70 Wash. 65, 70, 126 P. 75 (1912)

---

[9] This does not change Washington's evidentiary sufficiency analysis when the charged crime actually sets forth alternative means by which it may be committed. See, e.g., State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012) ("When a defendant challenges the sufficiency of the evidence in an alternative means case, appellate review focuses on whether 'sufficient evidence supports each alternative means.'" (quoting State v. Kintz, 169 Wn.2d 537, 552, 238 P.3d 470 (2010))).

(legislature has "'the inherent power to prohibit and punish any act as a crime'" (internal quotation marks omitted) (quoting State v. Woodward, 69 S.E. 385, 387 (1910))); State v. Danis, 64 Wn. App. 814, 820, 826 P.2d 1096 (1992) ("The Legislature has extremely broad, almost plenary authority to define crimes."). The guarantee of the Fourteenth Amendment applies only to actual crimes, duly enacted. It does not apply to crimes created by mistake in an erroneous jury instruction.

III

Tyler was charged pursuant to RCW 9A.56.068, which reads, "(1) A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle. (2) Possession of a stolen motor vehicle is a class B felony." (Alteration in original.)

The trial court's to-convict instruction reads as follows:

> To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 10th day of January, 2014, the defendant knowingly **received, retained, possessed, concealed, disposed of** a stolen motor vehicle;
> (2) That the defendant acted with knowledge that the motor vehicle had been stolen;
> (3) That the defendant withheld or appropriated the motor vehicle to the use of someone other than the true owner or person entitled thereto;
> (4) That any of these acts occurred in the State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Jury Instruction 4 (emphasis added).

In Hayes, we stated that the five-item definitional list included in the to-convict instruction obligated the State to prove each of the items as alternative means. 164 Wn. App. at 481. Importantly, however, we noted that the means set forth therein were not "necessarily" alternative means. Hayes, 164 Wn. App. at 481. Rather, we understood that the crime of possession of a stolen vehicle is, in actuality, a single means crime.[10]

Recent authority supports this view. In State v. Sandholm, 184 Wn.2d 726, 364 P.3d 87 (2015), and State v. Owens, 180 Wn.2d 90, 323 P.3d 1030 (2014), our Supreme Court explicated on the concept of alternative means. "[T]he alternative means doctrine does not apply to mere definitional instructions; a statutory definition does not create a 'means within a means.'" Owens, 180 Wn.2d at 96 (quoting State v. Smith, 159 Wn.2d 778, 787, 154 P.3d 873 (2007)).

The language of the statute is clear. "A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56.068(1) (alteration in original). Thus, the single means of committing the offense is to "possess" a stolen vehicle.

"Possession" is defined by use of the definition of "possessing stolen property," which reads,

> "Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

---

[10] Although our evidentiary sufficiency analysis in Hayes is no longer sound, our underlying interpretation of RCW 9A.56.068(1) remains sound.

RCW 9A.56.140(1) (emphasis added).

Indeed, our Supreme Court recently ruled that the language of RCW 9A.56.140(1) is merely definitional and does not set forth essential elements of the offense of possession of a stolen vehicle. State v. Porter, No. 92060-5, 2016 WL 3910995, at *3 (Wash. July 14, 2016). Thus, the definitional alternatives set forth in RCW 9A.56.140(1) are not alternative means of committing the crime established in RCW 9A.56.068(1). Rather, they are merely definitional alternatives.

Herein, ample evidence was adduced at trial that Tyler "possessed" a stolen vehicle, per RCW 9A.56.068(1), as defined by RCW 9A.56.140(1). Indeed, no party contests this.

## IV

Tyler next claims that, due to the wording of the to-convict instruction, the jury may not have been unanimous in its verdict. We disagree.

In Washington, a criminal defendant is entitled to a unanimous jury verdict. WASH. CONST. art. I, § 21; State v. Stephens, 93 Wn.2d 186, 190, 607 P.2d 304 (1980) (citing State v. Badda, 63 Wn.2d 176, 385 P.2d 859 (1963)). Tyler was charged with one count of possession of a stolen vehicle under RCW 9A.56.068(1). Properly understood, this statute creates a single means crime. A unanimous jury convicted Tyler as charged. Accordingly, the jury's verdict as to the single means crime of possession of a stolen vehicle was necessarily unanimous as to the means by which it was committed.

V

One final note. In his attempt to divorce his claim for relief from the guarantees of the federal constitution, Tyler completely undercuts his argument that the proper form of appellate relief is dismissal with prejudice.

When the State does not present a constitutionally sufficient quantum of evidence to support a conviction (as measured by the Fourteenth Amendment's due process clause), the Fifth Amendment's double jeopardy clause bars retrial. State v. Hardesty, 129 Wn.2d 303, 309, 915 P.2d 1080 (1996).

When the quantum of evidence specified by the Fourteenth Amendment *is* presented, however, retrial is not constitutionally barred. Indeed, this state of affairs describes the vast majority of reversals arising from trial court error in criminal cases.

In his attempt to tie his law-of-the-case argument to Washington's common law, Tyler necessarily condemns to failure his quest for dismissal with prejudice. We say this because, at common law, a reversal based on the prosecution's failure to prove the crime beyond a reasonable doubt resulted in the grant of a new trial—not dismissal with prejudice. This rule is articulated in two ancient cases.

> The law presumes the innocence of the appellant until his guilt is established beyond a reasonable doubt. We do not feel that we are invading the province of the jury in holding the evidence before us insufficient to warrant a conviction. . . .
>
> The judgment of the superior court is reversed, and the cause is remanded for a new trial.

State v. Pienick, 46 Wash. 522, 529, 90 P. 645 (1907).

> While we are [loath] to disturb the verdict of a jury on the ground of insufficiency of the evidence to justify the verdict, yet where the evidence as disclosed by the record is palpably insufficient to warrant the verdict, as we deem it to be in this case, it is our duty to say so and to award a new trial.

State v. Payne, 6 Wash. 563, 574, 34 P. 317 (1893).

Thus, were Tyler to be presenting a common law insufficiency of the evidence claim, the best result he could obtain would be a new trial.

But a new trial would be a futile endeavor. Upon a retrial, a proper to-convict instruction would surely be given. And both parties agree that the evidence already presented was sufficient to sustain a guilty verdict, as measured against the essential elements of the charged offense.

When a new trial would invariably result in an identical decision, it can safely be said either that the appellant has established no prejudice or that the claimed error was harmless. This, at best, would be the fate of Tyler's revised contention that he is entitled to relief based on Washington's common law (a contention that we do not deem to be established on its merits).[11]

---

[11] Tyler also assigns constitutional and statutory error to the trial court's imposition of mandatory assessments at his sentencing. The assessment of a mandatory assessment at sentencing, standing alone, is not enough to raise constitutional concerns. State v. Curry, 118 Wn.2d 911, 917 n.3, 829 P.2d 166 (1992) (rejecting as premature a challenge to the imposition of a victim penalty assessment); State v. Shelton, No. 72848-2-I, 2016 WL 3461164, at *6 (Wash. Ct. App. June 20, 2016) (rejecting as not ripe a challenge to an assessment of a DNA fee). Rather, "'[i]t is at the point of enforced collection . . . , where an indigent may be faced with the alternatives of payment or imprisonment, that he may assert a constitutional objection on the ground of his indigency.'" Curry, 118 Wn.2d at 917 (emphasis added) (alteration in original) (internal quotation marks omitted) (quoting State v. Curry, 62 Wn. App. 676, 681-82, 814 P.2d 1252 (1991)); Shelton, 2016 WL 3461164, at *5.

Tyler also contends that the sentencing court erred by assessing mandatory legal financial obligations without considering, pursuant to RCW 10.01.130(3), his ability to pay. However, RCW 10.01.130(3) only requires an inquiry into a defendant's ability to pay discretionary legal financial obligations. Shelton, 2016 WL 3461164, at *6 (citing State v. Blazina, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015)). The assessments herein are mandatory. Shelton, 2016 WL 3461164, at *6 (pursuant to RCW 43.43.7541, the DNA fee is mandatory); Curry, 118 Wn.2d at 917 (pursuant to RCW 7.68.035(1), the victim penalty assessment is

Affirmed.

Duyt, J.

We concur:

Leach, J.

Appelwick, J.

---

mandatory).  The legislature unequivocally requires imposition of these assessments at sentencing "without regard to finding the ability to pay."  Shelton, 2016 WL 3461164, at *6. Tyler has not established an entitlement to appellate relief.