# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75121-2-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CHAD THOMAS CLARK, | ) ) | |
| Appellant. | ) ) ) | FILED: July 3, 2017 |

APPELWICK, J. — Clark was convicted of four counts of failure to register as a sex offender and one count of bail jumping. He claims that the failure to register and bail jumping convictions are not supported by sufficient evidence. He argues that the four convictions for failure to register violate the prohibition against double jeopardy. He argues that the to-convict instructions erroneously omitted an element of failure to register and provided that substantial compliance is not a defense. In a statement of additional grounds, Clark argues that he received ineffective assistance of counsel. We reverse three of Clark's failure to register convictions and the bail jumping conviction, and remand for resentencing on a single failure to register conviction.

## FACTS

Chad Clark was convicted of rape of a child in the third degree in 2000. This conviction required him to register as a sex offender. Initially, he was required to register for a period of 10 years. RCW 9A.44.140(3).

Clark was subsequently convicted of failure to register as a sex offender in 2006, 2007, and 2010. These convictions reset the clock for the 10 year period that Clark was required to register as a sex offender.

In the beginning of 2013, Clark was registering as transient, meaning that he had no fixed address. As a result, he was required to check in weekly with Laurie Jarolimek, the registered sex offender coordinator for the Skagit County Sheriff's Office.

On February 5, 2013, Clark checked in with Jarolimek and gave her a note. The note said that he was going to be in treatment soon and did not know the address yet, but he would let Jarolimek know the next time that he checked in. After writing this note, Clark went to Alaska for treatment with the Tlingit Tribe. On February 11, 2013, Clark failed to check in with Jarolimek. Jarolimek referred charges to the State. On June 12, 2013, the State charged Clark with failure to register as a sex offender for his failure to register on or about February 11, 2013.

Clark was arrested on January 22, 2014. The next time Clark registered was February 20, 2014. He was again registering as transient. He did not register on February 24 or March 3 as required. Jarolimek referred charges. On March 24, 2014, the State amended the information to include a second charge of failure to register as a sex offender for Clark's failure to check in on or about March 3, 2014.

Clark again registered on April 11, 2014. At that point, he registered a permanent address. Clark changed this address on May 28, and registered as transient. He complied with the weekly registration requirement through June and

July. Then, Clark failed to check in on August 4. On August 19, 2014, the State again amended the information to add a third charge of failure to register as a sex offender for Clark's failure to check in on or about August 4, 2014.

Clark next registered on September 25, 2014, with a permanent address, but changed it to transient on September 29. He checked in weekly during October, and then failed to check in on November 3. On January 7, 2015, the State amended the information to include a fourth charge of failure to register for Clark's failure to check in on or about November 3, 2014. It also added a charge of bail jumping for Clark's failure to appear at a hearing on October 30, 2014.

Clark was arrested on January 17, 2016. The case proceeded to trial. Clark was convicted of the four counts of failure to register as a sex offender, as well as bail jumping. He appeals.

## DISCUSSION

Clark asserts that there was insufficient evidence to support the convictions for failure to register and bail jumping. He contends that the four convictions for failure to register violate the prohibition against double jeopardy. Clark argues that the "to-convict" instruction for failure to register erroneously omitted the knowing element of the offense. He asserts that the trial court erred in instructing the jury that substantial compliance is not a defense to failure to register. In a statement of additional grounds for review, he contends that he received ineffective assistance of counsel.

RCW 9A.44.130(1)(a) requires individuals who have been convicted of any sex offense to register with the county sheriff for the county of the person's

residence. A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered. RCW 9A.44.130(6)(b). The person must keep track of where he or she stays during the week and provide the list to the county if asked. Id. A person commits the offense of failure to register as a sex offender "if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130." RCW 9A.44.132(1). The purpose of the sex offender registration requirement is to assist law enforcement in providing notice of the location of convicted sex offenders within the law enforcement agency's jurisdiction. State v. Peterson, 168 Wn.2d 763, 768, 230 P.3d 588 (2010).

## I.   Failure to Register

Clark contends that there was insufficient evidence to establish that he failed to register as a sex offender. In reviewing the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Joy, 121 Wn.2d 333, 338-39, 851 P.2d 654 (1993). All reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. Id. at 339. A claim of insufficiency admits the truth of the State's evidence and all inferences therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

The to-convict instruction for count one provided:

> To convict the defendant of the crime of failure to register as a sex offender, as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:

4

(1) That on October 12, 2000, the defendant was convicted of a felony sex offense, rape of a child in the third degree;

(2) That this conviction required the defendant to register in the State of Washington as a sex offender on February 11, 2013; and

(3) On February 11, 2013, the defendant lacked a fixed residence, lived in Skagit County, and failed to update his registration information, or register weekly with the Skagit County Sheriff as required.

The to-convict instructions for counts two, three, and four were identical, except the date of February 11, 2013 was replaced with March 3, 2014, August 4, 2014, and November 3, 2014, respectively.

Clark contends that there was not sufficient evidence that he lived in Skagit County and lacked a fixed residence on the dates in question. He argues at length that we must apply the law of the case doctrine to conduct a sufficiency of the evidence analysis in this case. Under this doctrine, jury instructions not objected to become the law of the case, meaning that the State has the burden to prove unnecessary elements included in the jury instructions. State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Clark contends that the doctrine applies here, because where he lived and whether he lacked a fixed residence on the particular dates he failed to register were not essential elements of the crime. He does so even in light of the United States Supreme Court's decision in Musacchio v. United States, ___ U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016) and this court's decision in State v. Tyler, 195 Wn. App. 385, 382 P.3d 699 (2016). In Tyler, this court concluded that Musacchio superseded Washington courts' interpretation of the law of the case analysis. 195 Wn. App. at 397-400. We held that under

Musacchio, a reviewing court must disregard additional elements included in a to-convict instruction and should evaluate the sufficiency of the evidence based on the essential elements of the crime as enacted by the legislature. Id. at 400.

Here, the State agrees that it was required to prove that Clark lacked a fixed residence, lived in Skagit County, and failed to update his registration or register weekly on the dates listed. It does not dispute that these elements are essential elements of failure to register. Because the to-convict instructions did not include any unnecessary elements, we analyze whether sufficient evidence supports the listed elements on each count.

Count one related to February 11, 2013. Jarolimek testified that Clark was registering as transient prior to February 11, 2013. Jarolimek acknowledged that Clark gave her a note on February 2, 2013, saying that he was going to treatment soon and did not know the address. She did not know if he ever went to treatment. Clark testified that he went to Alaska to receive treatment after giving Jarolimek the note. Jarolimek stated that Clark failed to come in on February 11. And, she stated that he failed to register again until February 20, 2014—an entire year later.

Even drawing all inferences in favor of the State, there is insufficient evidence to prove that Clark was residing in Skagit County on February 11, 2013. Clark testified that after he gave Jarolimek the note on February 2, he left the State to pursue treatment in Alaska. The evidence does not support an inference that Clark remained in Skagit County. Count one is not supported by sufficient evidence. Therefore, we reverse and dismiss with prejudice the conviction on count one. See State v. Batson, 194 Wn. App. 326, 339, 377 P.3d 238 (2016)

(noting that double jeopardy prohibits the State from retrying a defendant on a charge unsupported by sufficient evidence).

Count two related to March 3, 2014. Jarolimek testified that Clark was again registering as transient in February 2014. Clark testified that when he registered on February 20, 2014, he intended to list his mother's address in Mount Vernon as his address rather than his mailing address. He believed that he did not have to check in weekly, because he did not register as transient. But, the check in sheet for February 20, 2014 shows that Clark registered as transient. Jarolimek stated that Clark did not check in on March 3.

Count three related to August 4, 2014. Jarolimek testified that Clark was registering as transient prior to August 4. She testified that he did not register on August 4.

Count four related to November 3, 2014. Jarolimek testified that Clark was registering as transient from September 29 through October. But, he did not check in on November 3. Clark testified that he was homeless during the time relevant to counts three and four. He said that the Mount Vernon Police Department kept finding where he was sleeping and telling him that he could not stay there.

Drawing all inferences from this evidence in favor of the State, a rational trier of fact could have concluded that Clark resided in Skagit County, lacked a fixed residence, and failed to register as required. He registered as transient in Skagit County yet did not appear for his weekly check-ins on the dates in question. His challenge to the sufficiency of the evidence of the failure to register convictions for March 3, August 4, and November 3 fails.

7

II.    Double Jeopardy

Clark argues that the three remaining convictions for failure to register violate the prohibition against double jeopardy. He asserts that the multiple charges were based on his irregular compliance with the registration requirement. Consequently, he contends that only one unit of prosecution was available.

Both the United States Constitution and the Washington State Constitution protect individuals from being twice put in jeopardy for the same offense. U.S. CONST. amend. V; WASH. CONST. art. 1, § 9. Under the double jeopardy doctrine, a criminal defendant is protected from being "(1) prosecuted a second time for the same offense after acquittal, (2) prosecuted a second time for the same offense after conviction, and (3) punished multiple times for the same offense." State v. Linton, 156 Wn.2d 777, 783, 132 P.3d 127 (2006). The proper remedy for a double jeopardy violation is to vacate the convictions that violate double jeopardy. State v. Knight, 162 Wn.2d 806, 810, 174 P.3d 1167 (2008).

Double jeopardy principles protect a defendant from being convicted more than once under the same statute for a single unit of the crime. State v. Westling, 145 Wn.2d 607, 610, 40 P.3d 669 (2002). So, when a defendant is convicted of multiple violations of the same statute, the double jeopardy question depends on the unit of prosecution that is punishable under the statute. Id.

This court addressed the unit of prosecution in a failure to register case in State v. Durrett, 150 Wn. App. 402, 406, 208 P.3d 1174 (2009). Durrett was required to register as a sex offender. Id. at 405. Because he had no fixed residence, he was required to check in weekly at the sheriff's office. Id. Durrett

8

reported to the sheriff's office for two consecutive weeks after his release from jail. Id. He then failed to report for two weeks. Id. Durrett reported again for the next two weeks. Id. Then, he failed to report for two months, until he was arrested. Id. The State charged Durrett with two counts of failure to register for the two periods of nonreporting: November 6, 2006 through November 17, 2006, and December 6, 2006 through January 22, 2007. Id. He was convicted as charged. Id.

On appeal, Durrett argued that his failure to report weekly during the charged time periods constituted a single unit of prosecution. Id. at 405-06. The Court of Appeals first looked to the legislature's intent under former RCW 9A.44.130 (2006). Id. at 406, 408. The statute criminalized a violation of any of the registration and reporting requirements. Id. at 408. Because Washington law favors construing "any" as meaning "every" and "all" rather than "any one," the court noted that it would be reasonable to construe the failure to report weekly as an ongoing duty. Id. at 408-10. Viewed in this way, the weekly reporting requirement is "an ongoing course of conduct that may not be divided into separate time periods to support separate charges." Id. at 409. The court acknowledged that it would also be reasonable to interpret former RCW 9A.44.130(11)(a) as punishing each weekly failure to report. Id. at 410. But, given the significantly harsher consequences of this interpretation and the absence of legislative intent, the court applied the rule of lenity. Id. Thus, it determined that the punishable offense was a course of conduct rather than each weekly failure to register. Id.

Turning to the facts of Durrett's case, the court stated, "The period of Durrett's failure to report weekly began on November 6, 2006, and ended on

January 22, 2007, when he was arrested."[1] Id. at 411. The court rejected the State's argument that Durrett interrupted this period of noncompliance by reporting for two weeks, thereby creating two periods of nonreporting. Id. at 410-11. The court noted that this interpretation would be contrary to the statutory goal of encouraging regular reporting. Id. at 411. Consequently, the court remanded for resentencing on a single count of failure to register. Id. at 413.

This court applied the same logic in State v. Green, 156 Wn. App. 96, 230 P.3d 654 (2010). Green was a level II sex offender who was required to register every 90 days. Id. at 98. The court concluded that the duty to register every 90 days created an ongoing course of conduct that could not support separate charges. Id. at 101. It noted that the State may file another charge for failure to register only if the continuing course of conduct of a prior failure to register has ended. Id.

While the statutory scheme has been amended since Durrett, it still provides that a person commits the offense if he or she has a duty to register and "knowingly fails to comply with any of the requirements of RCW 9A.44.130." RCW 9A.44.132(1) (emphasis added). Thus, the logic expressed in Durrett and Green applies to the current version of the statutory scheme.

But, neither Durrett nor Green speaks to when the unit of prosecution is cut off in a failure to register case. In Durrett, the defendant was alleged to have failed to register only before his arrest. 150 Wn. App. at 405. And, in Green, the conduct

---

[1] The statute does not require reporting when a person is in custody. Rather, RCW 9A.44.130(4)(a)(i) requires offenders to register at the time of release from custody.

comprising both alleged units of prosecution took place before the State first charged the defendant with failure to register. 156 Wn. App. at 98, 101. Neither case contained facts of violations after the initial arrest or initial charging. Thus, the issue in both cases was limited to whether each failure to report constituted a separate statutory violation.

Here, the State urges us to conclude that a separate unit of prosecution was available based on the filing of each new charge. It argues that the difference between this case and Durrett or Green is that Clark was charged after each failure to register.

Durrett informs the proper approach. Fairness concerns heavily influenced the Durrett court's decision. The court recognized that it would be reasonable to view the statute as punishing each weekly failure to report, but declined to adopt such an interpretation. Durrett, 150 Wn. App. at 410. Instead, the court applied the rule of lenity, in part because of the "significantly harsher consequences" of such an interpretation. Id. The court also declined to adopt the State's argument that periods of compliance cut off the unit of prosecution, permitting multiple charges. Id. at 411. The court noted that under this theory, Durrett could have been subject to even more charges if he had reported more frequently. Id. Permitting the State to charge more counts of failure to register due to intermittent compliance would not encourage regular reporting, so the court rejected this theory. Id.

The same fairness concerns persuade us that a charge theory of the unit of prosecution is not appropriate. Under a charge theory, the outcome in Durrett

would have been different had the State simply amended the information after each weekly check-in that Durrett missed. In that case, a charge theory would have permitted ten charges: one for each week that Durrett failed to check in. See id. at 405-06. We decline to embrace an approach wherein the number of charges available depends solely on the State's actions in filing new charges for each violation. Consequently, we conclude that only one unit of prosecution is available for a defendant's multiple missed check-ins prior to arrest.

The State also argues that arrest is an appropriate trigger for each unit of prosecution. We need not decide whether we agree, since it would have no effect on the outcome of the case. Clark was arrested twice in relation to this case: first, on January 22, 2014, and second, on January 17, 2016. If separate arrests triggered a new unit of prosecution, new charges were available for the period between February 5, 2013 and January 22, 2014, and for the period between March 3, 2014 and January 17, 2016. The first period encompasses the period of time charged in count one, while the second encompasses the periods charged in counts two, three, and four. Because we have concluded that count one must be dismissed for insufficient evidence, only one unit of prosecution was available in this case either under Durrett or under the State's arrest theory. We vacate two of the remaining convictions and remand for resentencing on a single failure to register conviction.

III.   Knowing Requirement

Clark argues that the to-convict instruction for failure to register as a sex offender erroneously omitted the requirement that the defendant knowingly failed to register.  He contends that this error was not harmless.

A to-convict instruction must contain all of the elements of the crime.  State v. Smith, 131 Wn.2d 258, 263, 930 P.2d 917 (1997).  This instruction serves as the yardstick by which the jury measures the evidence, and the jury has the right to regard the to-convict instruction as a complete statement of law.  Id.  Jurors are not required to supply an omitted element by referring to other jury instructions.  Id. at 262-63.

A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 and knowingly fails to comply with any of the requirements of that statute.  RCW 9A.44.132(1).  Here, the to-convict instructions for the four counts of failure to register did not provide that Clark had to knowingly fail to register.  The State concedes that the omission of this element was error.

The issue before us is whether the error was harmless.  An erroneous jury instruction may be subject to harmless error analysis if the error does not relieve the State of its burden to prove each element of the crime charged.  State v. Brown, 147 Wn.2d 330, 332, 58 P.3d 889 (2002).  Under the harmless error analysis, it must appear beyond a reasonable doubt that the error complained of did not contribute to the verdict.  Id. at 341.  Omitting an element from a jury instruction is harmless error if that element is supported by uncontroverted evidence.  Id.

The State concedes that the error was not harmless as to count two.[2] It asserts this is so, because Clark argued that his failure to register was due to a mistake in writing his mother's address. We accept the State's concession. While a jury could have found that Clark's failure to register on March 3, 2014 was knowing, there was not uncontroverted evidence to establish this element. The omission of the knowing requirement was not harmless as to count two.

The State contends that the error was harmless as to counts three and four. It argues that Clark admitted that he intentionally avoided registering on those occasions, because he did not want to be harassed by the police.

The evidence supports the State's contention. Defense counsel asked Clark if it was his intent to not register with regard to count three. Clark responded, "No." He explained why he did not register:

> Because I was -- I was chased around by the Mount Vernon Police Department, and every single place that I went, they would -- they would say you can't stay here, you can't stay here, you can't stay here. So I figured it better just to continue to go to court and try and drop this allegating [sic] charge.

As to count four, Clark said that he was under duress and being harassed by the police.

Thus, on counts three and four, Clark did not assert that he thought he had registered as required. He did not argue that his failure to register was a mistake or an accident. Instead, he testified that he purposefully did not register, because then the police would know where he had been staying and tell him to leave. This

---

[2] We do not address count one due to our conclusion that it must be dismissed.

testimony provided uncontroverted evidence that Clark's failure to register was knowing. The omission of the knowledge requirement from the to-convict instructions for counts three and four was harmless error.[3]

IV.   Substantial Compliance Instruction

Clark also asserts that the trial court erred in instructing the jury that substantial compliance is not a defense to failure to register as a sex offender. He argues that the substantial compliance instruction suggested that failure to register was a strict liability offense.

We review an alleged error of law in jury instructions de novo. State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005). Jury instructions are proper when they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. Id.

Here, the court instructed the jury, "Substantial compliance with the sex offender registration requirements is not a defense to the crime of Failure to Register as a Sex Offender." Clark objected to this instruction.

This court has previously held that substantial compliance is not a defense to failure to register as a sex offender. State v. Vanderpool, 99 Wn. App. 709, 711-12, 995 P.2d 104 (2000); State v. Prestegard, 108 Wn. App. 14, 22, 28 P.3d 817 (2001). This instruction was a correct statement of law. Even so, Clark contends that just because the instruction correctly stated the law does not mean that the jury should have been so instructed. He asserts that without a definition of

---

[3] Due to our holding on the double jeopardy issue, the error on count two will not allow remand for retrial on that count. Because the error as to counts three and four was harmless, the remaining failure to register convictions stands.

substantial compliance, the instruction was too confusing. And, he argues that this instruction compounded the erroneous omission of the knowledge requirement from the to-convict instruction by suggesting that any noncompliance with the registration requirement results in guilt. We disagree.

Had the to-convict instruction contained the knowledge requirement, Clark would have been fully able to argue that his failure to register was not knowing, whether or not the substantial compliance instruction was available. We conclude that the trial court did not err in giving this instruction.

V.    Bail Jumping

Clark also argues that there was insufficient evidence of bail jumping to support the conviction. He contends this is so, because the State did not prove that he was released by court order prior to his failure to appear.

RCW 9A.76.170(1) defines the crime of bail jumping:

> Any person having been released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state, or of the requirement to report to a correctional facility for service of sentence, and who fails to appear or who fails to surrender for service of sentence as required is guilty of bail jumping.

Thus, this crime requires that "the defendant: (1) was held for, charged with, or convicted of a particular crime; (2) was released by court order or admitted to bail with the requirement of a subsequent personal appearance; and (3) knowingly failed to appear as required." State v. Malvern, 110 Wn. App. 811, 813-14, 43 P.3d 533 (2002). The statute implies a nexus between the crime for which the defendant

was held, charged, or convicted, and the later personal appearance. <u>State v. Pope</u>, 100 Wn. App. 624, 627, 999 P.2d 51 (2000).

Here, the bail jumping charge related to Clark's failure to appear at a hearing on October 30, 2014. Several exhibits relating to this hearing date were admitted into evidence. The State introduced the October 10, 2014 order setting the trial confirmation date for October 30, 2014. It introduced the clerk's minutes from the October 30, 2014 hearing, which showed that Clark was not present at the hearing. It introduced the October 30, 2014 order directing the clerk to issue a bench warrant for failure to appear at the trial confirmation hearing. And, it introduced the October 30, 2014 bench warrant for Clark's arrest for failing to appear at the trial confirmation hearing. But, the State did not introduce evidence showing that Clark was released by court order or admitted to bail with the requirement to appear at the <u>October</u> 30 hearing.

The State introduced clerk's minutes from <u>January</u> 30, 2014. These minutes show that Clark was arraigned on an earlier version of the information and released on his personal recognizance. And, the State contends that Clark testified that he was released from jail. During Clark's testimony about count two, the March 3, 2014 failure to register, he explained that he went to jail after he returned from Alaska. When he got out of jail, he filled out a change of address form. This form is dated February 20, 2014.

Neither the January clerk's minutes nor Clark's testimony creates a reasonable inference that Clark was released by court order with the requirement that he appear at the October 30 hearing. None of the documentary exhibits

17

showed that Clark was booked on the new charge for failure to register on August 4, 2014 or released from custody. We conclude that the State failed to present sufficient evidence to establish that Clark was released by court order or admitted to bail. We reverse the bail jumping conviction and dismiss with prejudice.[4] See Batson, 194 Wn. App. at 339 (where a conviction is reversed for insufficient evidence, it must be dismissed with prejudice).

VI.  Ineffective Assistance of Counsel

In a statement of additional grounds for review, Clark contends that his attorney provided ineffective assistance of counsel by failing to pursue a mental health evaluation, failing to request his proposed jury instructions, and failing to call the witnesses he requested.

To succeed on a claim of ineffective assistance of counsel, the defendant must establish both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). This court presumes counsel to be effective. Id. The defendant must demonstrate that there was no legitimate strategic or tactical reason for counsel's action. Id.

Clark personally requested a mental health evaluation below. The court denied the motion, finding that there was no factual or legal basis for it.

---

[4] Clark also contends that the trial court exceeded its authority by sentencing him for felony bail jumping. Because we agree that the bail jumping conviction was not supported by sufficient evidence, we do not reach this issue.

At a later hearing to address whether Clark would represent himself or fire his attorney, Clark contended that his attorney refused to investigate the witnesses he believed would help his case. He again requested a mental health evaluation. The trial court explained to Clark that the threshold for a mental health evaluation is that a lawyer on either side believes that he could not appreciate what he was going through or assist his attorney. Because Clark had shown the opposite to be true, the court found no basis to order a mental health evaluation.

And, pretrial, Clark's attorney explained the strategic choices she had made regarding the witnesses in this case. She stated that Clark wanted to call his mother, his girlfriend, a mental health professional from Washington State Hospital, and his court appointed attorney on an unrelated case. Counsel investigated these witnesses and decided not to call them, because their testimony would likely be irrelevant, and in some cases could open the door to unfavorable cross-examination.

As to the jury instructions, counsel presented the jury instructions that she believed were proper based on the evidence, although she noted that Clark had a number of additional instructions he wanted to have before the court. Clark personally proposed jury instructions on diminished capacity, voluntary intoxication, and irresistible impulse. The court denied these requested instructions, finding that based on the evidence that was presented during trial, none of the instructions would apply.

Based on this record, we conclude that counsel did not provide ineffective assistance. Counsel made a number of strategic choices based on Clark's ability

to comprehend what was happening and assist in the process, her interviews with potential witnesses, and the evidence presented in the case. And, Clark raised his concerns with these issues below, and the court ruled against him. He cannot establish deficient performance or prejudice.

We reverse three of the four failure to register convictions and the bail jumping conviction. We remand for resentencing on a single conviction of failure to register as a sex offender.

WE CONCUR: